UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN BEATY,<br><br>        Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>        Defendant. | No. 2:18-cv-00519 AC<br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") reducing the monthly Supplemental Security Income ("SSI") benefits she receives under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f.[1] For the reasons that follow, the court will grant plaintiff's motion for summary judgment and deny the Commissioner's cross-motion for summary judgment.

////

////

---

[1] SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 et seq., is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

## I. BACKGROUND

Plaintiff applied for SSI on June 25, 2012 and was found to be disabled and qualifying for benefits beginning June 2012.[2] Administrative Record ("AR") 132.[3] However, on March 6, 2014, plaintiff was informed that the Social Security Administration ("SSA") would reduce her monthly benefits payments based on new information regarding the status of her relationship with David Dorney. AR 87. Plaintiff filed a request for reconsideration, which was denied on April 17, 2014. AR 76, 79-81. Plaintiff then requested an administrative hearing (AR 73) which took place on November 16, 2015. AR 155-179 (transcript). Plaintiff, who waived her right to a representative, and Dorney offered testimony at the hearing. AR 19, 31, 155-179.

On March 2, 2016, ALJ Robert C. Tronvig, Jr. issued an unfavorable decision, finding plaintiff was in a "holding out" couple relationship with Dorney from the point of discovery in March 2014 and continuing, and that due to a "holding out" couple relationship, Dorney's income and resources were rightfully included in the determination of the claimant's income and resources as of that date and continuing. AR 19-25 (decision). On January 9, 2018, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 3-5 (decision).

Plaintiff filed this action on March 9, 2018. ECF No. 1; see 42 U.S.C. §§ 205(g), 1383(c)(3). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 8, 9. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 14 (plaintiff's summary judgment motion), 15 (Commissioner's summary judgment motion), 16 (plaintiff's reply).

## II. LEGAL STANDARDS

The Commissioner's decision will be upheld if it was (1) supported by substantial evidence and (2) based on proper legal standards. 42 U.S.C. § 405(g); Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005). "Substantial evidence means more than a mere scintilla but less

---

[2] Plaintiff was born in 1973, and accordingly was 38 years old when she filed her application. AR 27. Plaintiff has at least a high school education. AR 27.
[3] The AR is electronically filed at ECF No. 12.3 (AR 1 to AR 185).

than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

SSI is a needs-based benefit program. As such, in making a benefits determination, the Commissioner considers an applicant's income and resources, along with those of a married applicant's spouse. See 20 C.F.R. § 416.1802 (effects of marriage on eligibility and amount of benefits). Under the Social Security Act, an applicant may be "deemed" married for purposes of SSI, irrespective of her marital status under state law. 42 U.S.C. § 1382c(d)(2). For purposes of determining SSI benefits, "if a man and woman are found to be holding themselves out to the community in which they reside as husband and wife, they shall be so considered[.]"[4] Id. The implementing regulations provide further guidance on when SSA will consider someone to be an applicant's spouse:

> We will consider someone to be your spouse (and therefore consider you to be married) for SSI purposes if . . . [y]ou and an unrelated person of the opposite sex are living together in the same household at or after the time you apply for SSI benefits, and you both lead people to believe that you are husband and wife.

20 C.F.R. § 416.1806(a)(3).

> . . . . If you tell us you are married we will consider you married unless we have information to the contrary. We will also consider you married, on the basis of

---

[4] The heteronormative language of the statute and its regulations have not been updated to reflect the reality of marriage equality. Nonetheless, SSA now also recognizes – as it must, see Obergefell v. Hodges, 135 S. Ct. 2584 (2014) – marriages between individuals of the same sex for SSI purposes. See Soc. Sec. Admin., Program Operations Manual System ("POMS") § GN 00210.800, available at https://secure.ssa.gov/poms.nsf/lnx/0200210800.

your statement, if you say you are living with an unrelated person of the opposite sex and you both lead people to believe you are married.

20 C.F.R. § 416.1821(a).

Generally, proof of marital status is unnecessary, unless an applicant "live[s] with an unrelated person of the opposite sex." 20 C.F.R. § 416.1826(a), (c); see also 20 C.F.R. § 416.1821(a). Section 416.1826 provides, in relevant part:

> (a) General rule: Proof is unnecessary. If you do not live with an unrelated person of the opposite sex and you say that you are not married, we will generally accept your statement unless we have information to the contrary.
> . . .
> (c) Exception: If you are living with an unrelated person of the opposite sex.
> 
> > (1) If you are living with an unrelated person of the opposite sex, you and the person you are living with must explain to us what your relationship is and answer questions such as the following:
> >   (i)   What names are the two of you known by?
> >   (ii)  Do you introduce yourselves as husband and wife? If not, how are you introduced?
> >   (iii) What names are used on mail for each of you?
> >   (iv)  Who owns or rents the place where you live?
> >   (v)   Do any deeds, leases, time payment papers, tax papers, or any other papers show you as husband and wife?
> > 
> > (2) We will consider you married to the person you live with unless the information we have, including the answers to the questions in paragraph (c)(1) of this section, all considered together, show that the two of you do not lead people to believe that you are each other's husband and wife.

20 C.F.R. § 416.1826.

### III. THE ALJ's DECISION

In reaching his determination that plaintiff should be considered married to Dorney, the ALJ discussed the following facts. Plaintiff and Dorney lived together "as a financial unit" for many years and have two children together. AR 22. For the better part of 25 years, plaintiff did not work outside the home but raised the children while Dorney worked and supported the family. Id. They moved "as a family unit" to several locations over the years. Id. When plaintiff's disability was established in June 2012, Dorney was living with her and was assisting her

4

personally and financially in running their household. Id. "They have shared a bank account together and vehicles." Id. In a March 6, 2014 Redetermination Summary for Determining Continuing Eligibility for SSI Payments, plaintiff acknowledged that she was living with Dorney and that they present themselves to others as husband and wife. AR 23. In her request for reconsideration, she disagreed with the "holding out" determination, however, stating that Dorney was her caretaker and not her spouse; they were both single adults not in a romantic relationship; and they did not hold each other out as spouses. Id. Plaintiff and Dorney's October 2015 Marital Relationship Questionnaires reported that they refer to themselves by their own names, and to each other as "friends"; and that mail is addressed to them by their individual names and no bills show them as husband and wife. AR 23, 24. The ALJ noted Dorney's statement on the questionnaire that "until he is sure that the claimant has the independence and assistance that she requires, can he, in good conscience, pursue his life further." AR 23. The ALJ likewise noted plaintiff's statement on the questionnaire that Dorney "has sacrificed so much to help her and she is greatly indebted to him. He is her friend and currently is the only one that she trusts." AR 24. Plaintiff testified at the hearing that she had lived continuously with Dorney and they had vehicles registered together. Id. Dorney testified at the hearing that he and plaintiff see themselves as individuals and are not in a romantic relationship; and that they changed the ownership of their bank account in November 2014 when they were told it could look bad for plaintiff. Id.

In conclusion, the ALJ reasoned:

> Clearly, the claimant and Dorney have lived together continuously since 1990 as a couple and established a communal immediate family unit with the birth of their two children in 1991 and 1994. As stated above, the claimant has worked very little during her years together with Dorney, whereas, Dorney's earnings record shows continuous earnings annually since 1980 . . . that were used to maintain their household. Although they both speak of an agreement as to their living arrangement that was entered into with a specified end date of May 2011, it was an oral agreement and there is no written confirmation as to the parameters if any of their relationship. Their statements attest to their dedication and commitment to each other as life partners in a couple situation, which has not been terminated.

AR 24-25. The ALJ thus found that plaintiff had been in a "holding out" couple relationship since March 2014. AR 25.

5

## IV. ANALYSIS

Plaintiff argues that the ALJ erred in finding spousal deeming proper, contending that: (1) the ALJ applied the wrong legal standard in making this determination, and (2) under the proper standard, there was insufficient evidence that plaintiff and Dorney were holding themselves out as married. ECF No. 14 at 7-11. Plaintiff requests that the court reverse the Commissioner's decision and remand with instructions to restore her benefits to their pre-spousal-deeming level, and reinstate the benefits reduced from March 2014 to the present. Id. at 11.

### A. The ALJ Did Not Apply the Wrong Legal Standard

Plaintiff argues that the ALJ applied the wrong legal standard by finding that plaintiff was in a "couple relationship" or a "'holding out' couple relationship," rather than finding that plaintiff and Dorney held themselves out as married. ECF No. 14 at 8-9. Plaintiff is correct that the term "couple relationship" appears nowhere in the spousal-deeming statute or its regulations; however, the court is unpersuaded that the mere use of this phrasing amounted to legal error. While not precisely mirroring the regulatory wording, the ALJ correctly stated the controlling issue as "whether the relationship meets the requirements of a couple as described in 20 CFR 416.1826." AR 19. Moreover, although not listed in the "Findings" section of the decision, the ALJ explicitly found elsewhere that plaintiff "did 'hold out' that she was in a husband and wife couple relationship with Dorney[.]" AR 21. Thus, the court concludes that the ALJ's use of the term "couple relationship" was an acceptable approximation of the statutory and regulatory language.

As the court now explains, however, it agrees with plaintiff that the ALJ erred in finding that the evidence established the only type of couple relationship that matters for purposes of 20 CFR 416.1826 – one in which the partners present themselves to the world as married.

### B. The ALJ's Determination Was Not Supported by Substantial Evidence

The ALJ's focus on the overall nature of plaintiff's and Dorney's relationship – as opposed to the names, statements, and language they used to outwardly present themselves – led to a determination, unsupported by substantial evidence, that the two were "holding themselves out to the community in which they reside as husband and wife." See 42 U.S.C. § 1382c(d)(2).

The record supports the ALJ's findings that plaintiff and Dorney have lived together continuously in a committed (though non-romantic) relationship for many years, with Dorney supporting plaintiff and their children. However, such findings do not thereby establish that plaintiff and Dorney held themselves out as married. As much as plaintiff and Dorney's living arrangement may mirror traditional conceptions of a married couple, section 1382c(d)(2) and the spousal-deeming regulations require affirmative representations by both an applicant and her disputed spouse "holding themselves out" as married, 42 U.S.C. § 1382c(d)(2), or "lead[ing] people to believe" they are married, 20 C.F.R. §§ 416.1806(a)(3), 416.1821(a).

Section 416.1826 of the regulations lists the types of questions that are considered in determining whether spousal deeming applies. Except for question (iv) (asking who owns or rents the place where you live), all of the examples ask about the names and words the individuals use to refer to themselves and each other. See 20 C.F.R. § 416.1826(c)(1) (asking what names you are known by, whether you introduce yourselves "as husband and wife," what names appear on your mail, and whether any papers "show you as husband and wife"). To the extent plaintiff argues that SSA is limited to these specific questions in making a spousal determination, the undersigned disagrees. The regulation refers to questions "such as" the ones listed, and states that the agency will consider the information it has, "including" the answers to the listed questions. 20 C.F.R. § 416.1826(c)(1), (2). Nevertheless, the determination must rest on sufficient evidence that the individuals have affirmatively described themselves as married.

The limited case law interpreting SSA spousal deeming further supports a requirement that the determination rest on each individual's affirmative statements and representations, not on the general impression their relationship gives or its functional equivalence to marriage in the view of the agency. See Gibbons v. Comm'r of Soc. Sec. Admin., No. 2:10-CV-02880 KJN, 2012 WL 996534, at *4-*5 (E.D. Cal. Mar. 23, 2012) (finding substantial evidence of holding out relationship based on multiple documents in which both recipient and disputed spouse stated they were married or used recipient's last name); Smith v. Sullivan, 767 F. Supp. 186, 188-89 (C.D. Ill. 1991) (spousal deeming was supported by substantial evidence, given numerous instances where the individuals "represented themselves as being married"; plaintiff stated on SSI

7

eligibility document that disputed spouse was "married and living with spouse," stated on another SSI request that they had been living together as husband and wife and would continue to do so indefinitely, and described disputed spouse as his wife to his doctor; disputed spouse stated on SSI eligibility document that she and plaintiff held themselves out to the public as married, and told her doctor that she and plaintiff were married), aff'd sub nom. Smith v. Shalala, 5 F.3d 235 (7th Cir. 1993); c.f. Brown v. Apfel, No. 98 CIV. 2915 HB, 60 Soc. Sec. Rep. Serv. 217, 1999 WL 144515, at *1-*3 (S.D.N.Y. Mar. 16, 1999) (describing the individuals' household and living arrangements before remanding based on ALJ's overreliance on the mere fact of cohabitation as a dispositive factor in the "holding out" analysis).

Here, the undersigned has found only three statements by plaintiff – all contained on the same SSI eligibility form – that she and Dorney are married or hold themselves out as married, and zero similar statements by Dorney. As referenced in the ALJ's decision, a March 6, 2014 Redetermination Summary for Determining Continuing Eligibility for SSI Payments ("Redetermination Summary") prompted SSA to re-evaluate plaintiff's spousal status. AR 89-97. That Summary recorded plaintiff's February 21, 2014 selections and input as follows. Under the Identification section, plaintiff stated, "I never was married"; she also stated, "I live with DAVID MATTHEW DORNEY. We present ourselves to others as husband and wife." AR 89. Under the section for Living Arrangements as of July 2012, plaintiff listed Dorney as a Non-Relative who was not married. AR 90. Under the section for Living Arrangements as of February 2014, plaintiff listed Dorney as a Spouse who was married; she also stated, "My spouse and I rent the home where I live." AR 91. These qualify as affirmative, if somewhat contradictory, statements that plaintiff and Dorney were married and/or holding out as married.[5]

If this were the only evidence in the record, these statements might be sufficient to support

---

[5] Plaintiff notes that these statements are computer generated. ECF No. 14 at 10. While this may be so, the Summary also states that the recipient declares under penalty of perjury that all of the information is true and correct. AR 94. Accordingly, the court may not disregard the statements. However, when weighing them against the greater volume of sworn statements to the contrary, the court does consider that plaintiff was not freely choosing the language with which to describe the relationship.

a spousal deeming determination. However, the record is replete with plaintiff's and Dorney's assertions to the contrary. In her June 25, 2012 SSI application, plaintiff stated that she never married. AR 151. In her February 4, 2013 Redetermination Summary, plaintiff listed Dorney as a Non-Relative who was not married, and stated that "Dorney and I do not present ourselves to the community as a married couple." AR 117-19. In her May 9, 2014 administrative hearing request, plaintiff stated:

> it is my opinion and the opinion of my caretaker, David, that we are not spouses, have never been married, and have never held ourselves out as spouses. We are both single adults. If we had wanted to get married, we would and could have done so. David and I do not have a romantic relationship, and as such do not hold each other out as spouses. David provides me with caretaking [services].

AR 73.

In her Marital Relationship Questionnaire and hearing testimony, plaintiff averred that she is known as "Susan C. Beaty, Susan, and Suzi"; she introduces Dorney as her "friend" or "friend and care provider/giver"; no bills or other papers show them as husband and wife; and that they "wanted children without marriage or any other form similar to marriage and/or it's entrapments." AR 36, 38, 163-72. In his Marital Relationship Questionnaire and hearing testimony, Dorney averred that he is known as "Dave Dorney"; they introduce each other as "[f]riends"; mail is addressed to them by their individual names; no bills or other papers show them as husband and wife; he has remained as plaintiff's "roommate[ ]" and caretaker; and they "don't have a romantic or personal relationship." AR 29-30, 172.

As the Commissioner points out, there is good reason to be more skeptical of the statements plaintiff and Dorney made after becoming aware that spousal deeming would decrease plaintiff's SSI payment. However, SSA's further investigation into plaintiff's and Dorney's relationship produced no evidence of affirmative representations that the two were married. Rather, the internal SSA reports convey that Dorney supported plaintiff, who did not work, and that plaintiff and Dorney "lived together as a financial unit," jointly leased residences, moved together with their children, and shared vehicles. AR 32, 67, 69, 86, 89. Nowhere do the reports

indicate that the two were known by the same last name, were listed on documents as husband and wife, or represented to others that they were married.

Based on this record, the undersigned concludes that there was inadequate evidence from which to conclude that plaintiff and Dorney affirmatively held themselves out as married for purposes of SSI benefits calculation.

The SSA has chosen "holding out as married" as the standard for spousal deeming. Whether some other standard would better serve the purposes of the statute, or better address the variety of contemporary relationships and mutual-support arrangements, is not a question for this court. Neither is it a matter within the discretion of the ALJ. Because the ALJ was not free to substitute evidence of co-parenting, co-habitation, and financial support for evidence of public presentation as married, his finding constitutes reversible error. Plaintiff's motion for summary judgment will accordingly be granted.

C. Remand for Repayment and Reinstatement of Benefits

The court, in its discretion, finds this to case to be one of the "rare circumstances" in which remand for an award of benefits, without further administrative proceedings, is warranted. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1100 (9th Cir. 2014) (courts "generally remand for an award of benefits only in 'rare circumstances' . . . where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed") (citations omitted). Although the "credit-as-true" rule applies imperfectly in a case such as this where a disability determination is not at issue, the court applies its general framework here. Remand for benefits is permissible where (1) the ALJ has failed to provide "legally sufficient reasons" for his determination, (2) further administrative proceedings would not be "useful," considering "whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules," such that (3) "the ALJ would be required" to find for the plaintiff. Id. at 1103-04, 1107.

First, for the reasons discussed above, the ALJ's reasons for deeming plaintiff to be married were legally insufficient. Second, further administrative proceedings would not be useful

in this case because it is clear that plaintiff and Dorney have not and do not affirmatively represent themselves as married.  SSA's investigation of the matter revealed overwhelming evidence that the two represent themselves as individuals, no matter how much their living situation may functionally approximate a traditional marriage.  Thus, further development of the record is unnecessary.

The government argues in part that further proceedings are needed because Dorney's financial support may qualify as "in-kind support and maintenance" that would reduce plaintiff's SSI payment, separate from the spousal deeming issue.  See 20 C.F.R. §§ 416.1130 to 416.1141.  ECF No. 15 at 13.  This question was not a stated basis for the Commissioner's reevaluation of plaintiff's SSI payments, it is not at issue in this case, and the court declines to offer the Commissioner a "second bite at the apple" on this entirely separate ground.  The case is therefore remanded with instructions to cease spousal deeming in calculating plaintiff's SSI payment going forward, and to restore the benefits withheld since spousal deeming began in March 2014.

## V.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14), is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 15), is DENIED;

3. The ALJ's decision is reversed, and the case is remanded to the Commissioner solely for a recalculation of benefits, past and present, in conformity with this opinion; and

4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

SO ORDERED.

DATED: May 13, 2019

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE